IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BENJAMIN E. NASH,

    Plaintiff,

    vs.                               No. CV  20-01359 KRS/GJF

THOMAS J. VILSACK[1]
Secretary of Agriculture,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On December 29, 2020, Plaintiff Benjamin E. Nash filed a civil complaint arguing that

the United States Forest Service (USFS) discriminated against him when his supervisors said he

would not be rehired for the next field season, nor would he be permitted to volunteer.

Defendant has filed two motions asking the Court to either dismiss[2] or grant summary judgment[3]

on Plaintiff's claims, contending that the Court does not have subject matter jurisdiction over

certain claims and that others are untimely because Plaintiff failed to exhaust his administrative

remedies. The motions are fully briefed.[4] After considering the parties' briefing, the record of the

case, and the applicable law, the Court will grant Defendant's motions.

---

[1] As originally captioned, the Defendant was Sonny Perdue, Secretary of Agriculture. Now, Thomas J. Vilsack is
Secretary of Agriculture and, as Sonny Perdue's successor, "is automatically substituted as a party." *See* Fed. R. Civ.
P. 25(d).
[2] *See* Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Doc. 21)
(Motion to Dismiss).
[3] *See* Defendant's Motion for Summary Judgment (Doc. 22) (Summary Judgment Motion).
[4] See Plaintiff's Opposition to Defendant's Motion to Dismiss (Doc. 26), Defendant's Reply in Support of Motion to
Dismiss (Doc. 28), Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Doc. 27), and Defendant's
Reply in Support of Motion for Summary Judgment (Doc. 30).

## I. Factual Background & Procedural History

### A. Factual Background

Facts set forth in Defendant's Motion that are not specifically controverted by Plaintiff are deemed undisputed. *See* D. N.M. LR-CIV 56.1(b). The following facts are undisputed or where disputed are presented in the light most favorable to Plaintiff.

Beginning in 2013, USFS employed Plaintiff as a seasonal employee. Doc. 21 at 2. In 2016, Plaintiff was diagnosed with post-traumatic stress disorder ("PTSD"), a severe phobia and panic disorder. Doc. 27-2 at 1.  In 2019, USFS employed Plaintiff as a seasonal Lead Wildlife Technician in Ruidoso, New Mexico Doc. 27-3 at 1. In 2019, Plaintiff also was an alcoholic. Doc. 1 at 2; Doc. 22-9 at 1.

Federal agencies are required to provide training to their employees of the provisions of the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002, commonly known as the No FEAR Act. The training notifies federal employees of their rights and protections under federal antidiscrimination and whistleblower protection laws. Doc. 22-4 at 1. Included in the training is the information that federal employees with a discrimination claim must contact an Equal Employment Opportunity (EEO) counselor within 45 calendar days of the alleged discriminatory or personnel action before filing a formal complaint of discrimination with the agency. *Id.* at 2. The records show that Plaintiff took No FEAR Act training on June 15, 2015, and on June 30, 2016. Doc. 22-2 at 2. There are no copies of the actual training given to Plaintiff on June 15, 2015, but there is a copy of the training Plaintiff received on June 30, 2016. *Id.* The 2016 training included information about how to file a discrimination claim and that a claim must be filed within 45 days. *Id.*

2

While employed with USFS, Plaintiff also took anti-harassment training on June 30, 2016, and on June 26, 2017.  Doc. 22-3 at 1-2. The anti-harassment training also included information about how to file a complaint and the 45-day time limit. Doc. 22-2 at 2; Doc. 22-5 at 2.

In the fall of 2019, USFS began a misconduct investigation of Plaintiff based on allegations made by a coworker. Doc. 1 at 2. During that investigation, on November 15, 2019,[5] Plaintiff was told by his supervisor, Larry Cordova, and the district ranger, Jodie Canfield, that they would not rehire Plaintiff for the next season. *Id.* They also informed Plaintiff that he would not be permitted to volunteer on an outdoor project. *Id.*

On or about November 27, 2019, a misconduct investigator gave Plaintiff his statement about the alleged misconduct incident to review. Plaintiff heavily edited the statement. Doc. 22-11 at 5-9.

Between November 26, 2019, and December 20, 2019, Plaintiff applied to four positions at USFS. Doc. 22-1 at 1-2. On November 27, 2019, Plaintiff edited and signed a typed statement regarding the events that led to the misconduct investigation. Doc. 22-11 at 5-9.

**B. Procedural History**

On February 17, 2020, Plaintiff contacted an EEO counselor to report discrimination based on the events that occurred on November 15, 2019.  Doc. 22-7 at 1.  On March 18, 2020, Plaintiff received a Notice of a Right to File a formal EEO Complaint. See Doc. 22-9 at 2. On March 27, 2020, Plaintiff filed a Formal Complaint of Employment Discrimination. *Id.* at 3-5.

---

[5] It is not clear whether these events occurred on November 14th or 15th. Plaintiff originally stated that the meeting occurred on November 14, but later stated that it occurred on November 15 and has consistently used that date in his briefing. Whether the meeting occurred on November 14th or 15th does not impact the analysis, so the Court will use the later date. *See* Doc. 22-8 at 1.

3

Plaintiff attached to the EEO Complaint a letter dated November 1, 2019, by counselor Robin LaRocque explaining that she had been counseling Plaintiff from April through November 2019. Doc. 22-7 at 1. Subsequently, on April 21, 2020, the USDA Center for Civil Rights Enforcement ("Agency") dismissed Plaintiff's EEO Complaint as untimely. *Id*. at 2. Plaintiff appealed the final agency decision to the Equal Employment Opportunity Commission (EEOC) on May 18, 2020. *Id.* In support of his appeal, Plaintiff submitted the letter from Robin LaRocque and his November 27, 2019, statement about the alleged misconduct. Before the EEOC issued its decision, on August 23, 2020, Plaintiff submitted a letter entitled "Newly Discovered Evidence to Support My Case" stating that he had just learned there was no record in the USFS AgLearn database of him taking the No FEAR Act Training. Doc. 22-12 at 1.

Training received before 2018 is not in the AgLearn database as it has been archived offline due to a change in the software platform. Doc. 22-2 at 1.

On September 30, 2020, the EEOC affirmed the Agency decision. Doc. 22-7 at 2.

## II. Legal Standard

### A. Motion to Dismiss Standard

Pleadings must state a basis for subject matter jurisdiction and an actional claim. Before answering a complaint, a defendant may move for dismissal on the grounds that as a matter of law, the complaint is inadequate procedurally or substantively. Federal Rule of Civil Procedure ("Rule") 12(b) provides a list of these affirmative defenses. Defendant asserts two, Rule 12(b)(1) and Rule 12(b)(6).

A 12(b)(1) motion asks for dismissal on the grounds that the court does not have the power—subject matter jurisdiction—to hear the case. "Federal courts are courts of limited

4

jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation and quotation marks omitted). Because of a federal court's limited jurisdiction, as a threshold matter, plaintiffs must show that the court has the power to adjudicate a plaintiff's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998). "As a general rule, Rule 12(b)(1) motions to dismiss for lack of jurisdiction take one of two forms: (1) facial attacks[] and (2) factual attacks." *Paper, Allied-Indus., Chem. And Energy Workers Int'l Union v. Cont'l*, 428 F.3d 1285, 1292 (10th Cir. 2005). A facial attack challenges the "sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true. In a factual attack ... the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends." *Id.* In the Motion to Dismiss, Defendant makes a facial attack on Plaintiff's Complaint. When examining a 12(b)(1) facial challenge, courts should apply the same analysis as a Rule 12(b)(6) motion. *See Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017).

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (further citation omitted)). "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability." *Moya v. Garcia,* 895 F.3d 1229, 1232 (10th Cir.

2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The term "plausible" does not mean "likely to be true." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl, Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When analyzing the sufficiency of the allegations under 12(b)(6), a court may consider documents incorporated into the complaint by reference and undisputed as to authenticity. *Smith*, 561 F.3d at 1098.

**B. Summary Judgment Standard**

A court may grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (internal quotation marks and citation omitted). When applying this standard, the Court examines the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact." *Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)). Disputes are genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and they are material "if under the substantive law it is

essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (further citation and internal quotation marks omitted).

### III.  Analysis

As an initial matter, Plaintiff argues that "[t]he Court should deny the Defendant's Motion for Summary Judgment and (Motion to Dismiss) because the Defendant is withholding evidence important for the Plaintiff's case." Doc. 27 at 6. The evidence he seeks is a 2019 Misconduct Investigation Report ("Report"). Presumably, USFS generated the Report to explore the allegations made by Plaintiff's coworker. Although Plaintiff did receive a copy of the Report, he claims it was "excessively and unnecessarily redacted." *Id.* at 5.  Significantly, Plaintiff does not specify why this evidence is important or necessary for his response to either Motion.

First, the Court observes that the Report cannot materially assist Plaintiff in his response to Defendant's Motion to Dismiss, which argues that Plaintiff's complaint is either facially insufficient under 12(b)(1) and/or implausible under 12(b)(6). When analyzing a motion to dismiss, a court takes all of plaintiff's factual allegations as true and examines only the sufficiency of the complaint. Therefore, all evidence relevant to a decision on the Motion to Dismiss rests within the four corners of the Complaint. Extraneous evidence resulting from discovery is irrelevant or if relevant, the motion must be converted to a motion for summary judgment. *See Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987)

But a party may refer to evidence outside the four corners of a complaint to respond to a summary judgment motion. Rule 56(d) provides guidelines for those seeking supplementary evidence for a response to a summary judgment motion. A party seeking to obtain "facts essential to justify its opposition" must "present an affidavit that identifies 'the probable facts not

available and what steps have been taken to obtain these facts. The nonmovant must also explain how additional time will enable him to rebut the movant's allegations of no genuine issue of material fact.'" *F.D.I.C . v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013) (quoting *Trask v. Franco*, 446 F.3d 1036, 1042) (10th Cir. 2006)); Rule 56(d). In response to a party's affidavit or declaration, a court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. " Rule 56(d). "'Unless dilatory or lacking in merit, the motion should be liberally treated.'" *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1554 (10th Cir. 1993) (quoting *First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (further citations omitted).

Defendant's Summary Judgment Motion argues that Plaintiff has not provided a cognizable justification for his failure to timely exhaust his administrative remedies before bringing his Complaint. Although not clearly stated in his brief, Plaintiff appears to assert that the Report is integral to his response. But Plaintiff has not (1) requested more time to respond to Defendant's Summary Judgment Motion, (2) presented the Court with an affidavit or a declaration identifying the necessary probable facts that can be gleaned from the report, or (3) explained how those facts will demonstrate that a material fact is in genuine dispute. Granted, the Plaintiff appears pro se. But, although given some latitude, a pro se plaintiff must still follow the rules. *See Yang v Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) ("Pro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."). Even if the Court were to construe Plaintiff's statement in his Response as an implied declaration, that statement provides no clarification as to how the Report, which examines allegations by a colleague against Plaintiff, has any relevance to

the untimeliness of Plaintiff's formal complaint. For this reason, the Court will deny Plaintiff's request.

### A. Motion to Dismiss

Plaintiff alleges that his "[C]omplaint arose from an incident of discrimination on the basis of mental health" and asserts that the discrimination violated "The New Mexico Human Rights Act, § 1983 (NMHRAA) and other federal laws."[6] Doc. 1 at 1.  Defendant's Motion to Dismiss makes a facial attack on the Complaint's sufficiency, arguing that this Court does not have subject matter jurisdiction over any of Plaintiff's claims. Alternatively, Defendant asserts that Plaintiff's claims are not plausible and so should be dismissed under Rule 12(b)(6).

Plaintiff asserts that this Court has subject matter jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983.  Both statutes address an individual's civil rights when confronted by state action. Section 1343(a)(3) explains that a federal court's jurisdiction includes claims "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

Section 1983 does not identify substantive rights but gives a plaintiff a civil basis for asserting a violation by a state actor of the plaintiff's federal or constitutional rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Section 1983 provides:

---

[6] Plaintiff does not identify these "other federal laws" in his Complaint, but in his Response to Defendant's Summary Judgment Motion, Plaintiff cites the American with Disabilities Act ("ADA") and the Rehabilitation Act. *See* Doc. 27 at 3. As the Court does give pro se plaintiffs some leeway, and the Plaintiff does refer to "other federal laws" in his Complaint, the Court will also examine whether Plaintiff has properly asserted a claim under these statutes.

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.  Textually, the statute authorizes claims for relief against officials who acting "under color" of *State* law violate federal rights. To act under color of state law is to "exercise[] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Thus, to assert a plausible claim under § 1983, a plaintiff must state facts indicating a violation of his constitutional or federal rights by a defendant or defendants who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172) (1961) (further citation omitted)). Because § 1983 involves a state official acting under color of state law, federal officials are rarely liable under § 1983. The Tenth Circuit has indicated that the only exception to this general rule is when a federal official has conspired with state officials. *Big Cats of Serenity Spring, Inc. v. Rhodes*, 843 F.3d 853, 869 (10th Cir. 2016) ("Most courts agree that conspiracy with state actors is a requirement to finding that federal actors jointly acted under color of state law.").

In his Complaint, Plaintiff names one Defendant, the Secretary of Agriculture, Thomas J. Vilsack. Thus, Mr. Vilsack is a federal official. In the absence of a state defendant or an applicable state law, Plaintiff's claim under § 1983 lacks merit. When a claim is "'completely devoid of merit as not to involve a federal controversy,'" dismissal for lack of subject matter

10

jurisdiction is proper. *Citizens for a Better Env't*, 523 U.S. at 89 quoting *Oneida Indian Nation of N.Y. State v. Cnty. of Oneida*, 414 U.S. 661, 666 (1974); *see also Cardtoons L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir. 1996) (dismissal of a complaint for lack of subject matter jurisdiction is justified when a claim is "so attenuated and unsubstantial as to be absolutely devoid of merit or frivolous").

Plaintiff argues that the Court should not dismiss his claim because "Defendant's subject matter jurisdiction argument is unreasonable and an attack on the Plaintiff for being a pro se litigant, who simply copied language from the EEOC in his complaint to the Court." Doc. 26 at 1. Plaintiff suggests that the EEOC addressed Defendant's argument about subject matter jurisdiction and found it meritless. But Plaintiff misunderstands the EEOC's decision.

In its decision, the EEOC observed that the Agency dismissed Plaintiff's claim for two reasons: 1) a failure to state a claim because it was a collateral attack on an internal investigation; and 2) untimeliness. Doc. 22-13 at 2. The EEOC overruled the Agency's first basis for dismissal, finding that the Agency's determination that Plaintiff's claim lacked merit improperly "addresse[d] the merits of the claim without a proper investigation as required by the regulations." *Id.* But the EEOC affirmed the Agency's dismissal of the claim on the grounds that it was untimely. *Id.* Nowhere in its decision does the EEOC address the § 1983 claim Plaintiff brings here.

Mindful that Plaintiff appears pro se, the Court observes that the case *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) articulates a legal avenue analogous to § 1983 for claims against federal officials who have allegedly violated an individual's federal or constitutional rights. In *Bivens*, the Supreme Court explained that "victims

11

of a constitutional violation by a federal agent have a right to recover damages against the official in federal court." *Carlson v. Green*, 446 U.S. 14, 18 (1980). Unlike § 1983, *Bivens* is not codified in federal law but has evolved through the interplay of federal case law, and the statute that confers federal question jurisdiction on federal courts.  Nonetheless, even if Plaintiff meant to assert a claim under *Bivens*, Plaintiff has failed to meet his burden to state a facially sufficient or plausible claim.

Plaintiff brings these claims against Mr. Vilsack, as Secretary of Agriculture. Plaintiff's designation of Mr. Vilsack in conjunction with Mr. Vilsack's position as Secretary of Agriculture implies that Plaintiff intends to sue Mr. Vilsack in his official capacity. Bringing a claim against a federal employee in their official capacity is tantamount to bringing a claim against the agency for which the employee works, or against the United States. When a Plaintiff proceeds against the United States, the Plaintiff must show that the United States has consented to be sued under the relevant statute. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The United States has not waived its sovereign immunity for *Bivens* claims.  *Meyer*, 510 U.S. at 486. *Bivens* claims cannot be asserted directly against either the United States or federal officials in their official capacities or against federal agencies." *Smith,* 561 F.3d at 1098. To the extent that Plaintiff sues Mr. Vilsack in his official capacity, Plaintiff's *Bivens* claim must be dismissed under 12(b)(1) for lack of subject matter jurisdiction.

Because he appears pro se, Plaintiff may have incorrectly designated Mr. Vilsack as a defendant in his official capacity. But even if Plaintiff were to sue Mr. Vilsack in his individual capacity, to escape dismissal of his Complaint under Rule 12(b)(6), he must assert a plausible

12

claim. A claim is plausible when, if the facts are as alleged, a defendant may be liable for the charged misconduct. *Iqbal*, 556 U.S. at 678. Generally, a *Bivens* claim must assert "a violation traceable to a defendant-official's 'own individual actions.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Iqbal,* 556 U.S. at 676)). Thus, to be liable in his individual capacity, Mr. Vilsack must have performed some act that led to the claimed violations. *Iqbal*, 556 U.S. at 677. Plaintiff has not alleged any facts suggesting that Mr. Vilsack was personally responsible for the alleged discrimination. Moreover, the facts as alleged do not give this Court "reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *See Ridge at Red Hawk, LLC*, 493 F.3d at 1177. For this reason, even if Plaintiff intended to assert a *Bivens* claim against Defendant in his individual capacity, that claim is implausible and will be dismissed under 12(b)(6).

Plaintiff also asserts a claim under NMHRA. The NMHRA is a state act that prohibits employment discrimination. In the Federal Tort Claims Act, the United States makes a limited waiver of sovereign immunity to make federal officials liable "for damages arising from tortious acts of government employees." *Farley v. United States*, 162 F.3d 613, 615 (10th Cir. 1998) (citing 28 U.S.C. § 1346(b)). Not included in the United States' limited waiver is an exemption for federal employees pursuing claims for discrimination based on federal employment. *See Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). Rather, federal employees must look solely to the Rehabilitation Act for legal support for their discrimination claims. *Id.*, *see also Johnson v. U.S. Postal Serv.*, 861 F.2d 1475, 1477 (10th Cir. 1988). Because the Court does not have jurisdiction over a NMHRA claim, Plaintiff's NMHRA claim is facially insufficient under Rule 12(b)(1) and will be dismissed.

Although not fully briefed, Plaintiff also appears to suggest that he may have a claim against Defendant under the ADA. While Plaintiff does not refer to the ADA or its provisions in his Complaint, he argues in his Response to the Motion for Summary Judgment that the ADA "requires the Defendant to provide reasonable accommodation to qualified individuals with disabilities unless to do so would cause undue hardship." Doc. 27 at 3. Plaintiff correctly cites the ADA, but he does not acknowledge that by its terms the ADA precludes federal employees from coverage. *See* 42 U.S.C. § 1211(5)(B)(i) (specifically excluding United States as employer subject to Act); *see also Brown*, 425 U.S. at 835. Because the United States has not consented to be sued by its employees under the ADA,[7] this Court does not have subject matter jurisdiction over an ADA claim.

### B.  Summary Judgment

Plaintiff also asserts a disability claim under the Rehabilitation Act, which "prohibits the federal government from discriminating against an 'otherwise qualified individual with a disability.'" *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012) (quoting 29 U.S.C. § 794(a)). Defendant's Summary Judgment Motion argues that Plaintiff's failure to timely exhaust his administrative remedies as required by the Rehabilitation Act precludes his claim here. Doc. 22 at 1. Plaintiff admits that he "missed [the 45-day] window" but counters that either the Agency or the EEOC should have granted him an extension to accommodate his mental health disability. Doc. 27 at 3.

---

[7] Because the Rehabilitation Act incorporates the standards of the ADA, courts interchangeably apply the analysis in ADA and Rehabilitation Act decisions. *Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020); *see also* 29 U.S.C. § 794(d).

When an employee or an applicant in the federal sector believes that a federal agency has violated the Rehabilitation Act, the Code of Federal Regulations, 29 C.F.R. § 1614 provides the applicable procedures.  Federal employees must comply with these "specific administrative complaint procedures in order to exhaust their administrative remedies" before bringing a claim to federal court. *Hickey v. Brennen,* 969 F.3d 1113, 1118 (10th Cir. 2020).  One procedural requirement demands that a federal employee initiate an informal complaint with an EEO counselor within 45 days of the alleged discriminatory personnel action. *See* 29 C.F.R. § 1614.105(a)(1); *Green v. Brennan*, 578 U.S. 547, 549-50 (2016).  This requirement is a claims processing rule that an employer may raise as an affirmative defense. *Hickey, 969 F.3d at 1118.* If an employer raises a failure to exhaust, a court must enforce it. *Id.* (citing *Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849-51 (2019)).

Defendant has asserted this affirmative defense. The parties agree that Plaintiff did not initiate an informal complaint with a counselor within the 45-day period. Rather, after the alleged discriminatory incident that terminated his employment, Plaintiff waited 95 days before contacting an EEO counselor. The Agency dismissed Plaintiff's claim on this basis, and the EEOC affirmed. Defendant argues that these decisions are controlling and so seeks summary judgment on the grounds that Plaintiff's claims are not justiciable.  Plaintiff nonetheless argues that the Defendant cannot assert his untimeliness as an affirmative defense because (1) his failure to file the claim within 45 days falls within one of the regulation's exceptions and/or (2) his mental disabilities estop the government from asserting this defense.

The administrative regulation provides four exceptions that, if applicable, require the agency or Commission to extend the 45-day time limit: (1) "when the individual shows that he or

she was not notified of the time limits and was not otherwise aware of them," (2) "that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred," (3) "that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits," or (4) "for other reasons considered sufficient by the agency or the Commission." Section 1614.105(a)(2). "'The regulation thus provides that if the aggrieved person meets the circumstances set out therein, either the agency or the Commission must extend the time limit, and vests both the agency and the Commission with discretion to extend the limit for reasons other than those contained in the regulation itself.'" *Hickey*, 969 F.3d at 1123 (quoting *Sizova v. Nat'l Inst. of Standards & Tech*, 282 F.3d 1320, 1325 (10th Cir. 2002)).

Plaintiff claims that he falls within the parameters of these exceptions because there is no record within the relevant electronic database that he received No FEAR Act training and so he did not have "adequate knowledge" of the 45-day time limit. Doc. 27 at 2. Plaintiff made this same argument to the EEOC in the August 23, 2020, supplementary letter. The EEOC decision did not specifically address this argument but stated that "Complainant has presented no persuasive arguments or evidence warranting an extension of the time limit for initiating EEO Counselor contact. Rather he states he had a difficult time seeing past his guilt for creating the situation that [led] to the Agency's actions." Plaintiff does not dispute the EEOC's statement or explain why it was wrong. Nor does Plaintiff debate that he received No FEAR Act training or that he had actual knowledge of the 45-day requirement.

Substantial evidence supports the EEOC ruling. The EEO Counselor Report explains that Plaintiff had completed No FEAR Act training but did not submit a complaint because "he did

not think anyone would take him seriously." Doc. 22-8 at 1. In his subsequent formal complaint, Plaintiff again stated that he did not file a complaint earlier because "[he] didn't feel like anyone would take him seriously until he was cleared of wrongdoing." Doc. 22-9 at 4. He made a similar statement in his "Justification for Appeal of Final Agency Decision: "I truly believed (and still do) that no one would take me seriously until the misconduct investigation cleared me of wrongdoing." Doc. 22-11 at 2. It is only in the August 23, 2020, supplementary letter to the EEOC that Plaintiff first asserts that he had not taken the No FEAR Act training and so could not have had adequate knowledge. Notably, neither in this letter, nor in the briefing here, does Plaintiff argue that he did not know the 45-day deadline.

Next, in an argument not made to either the Agency or the EEOC, Plaintiff suggests that Defendant violated the No FEAR Act by not training him every two years. Doc. 27 at 2-3. According to Plaintiff, "if simply having the training once is enough, then the law wouldn't require it every two years." *Id.* at 2. Plaintiff suggests that the Court should "make a default judgment in the Plaintiff's favor because the Defendant has committed multiple No FEAR Act violations by not providing the Plaintiff with regular and adequate training about the EEO process, which undermines their entire 45-day argument." *Id.* at 3.

The regulation does not provide an exception based on a federal employee's subjective knowledge or how often an employee is trained. The relevant question is whether an employee had constructive notice of the 45-day deadline. *See Hickey*, 969 F.3d at 1124 ("We agree with our sister circuits that constructive notice is sufficient to bar relief under Section 105(a)(2)" and "subjective ignorance alone does not automatically entitle the plaintiff to the exception in (a)(2)"). There is substantial evidence that Plaintiff received at least four notices of the 45-day

limit between 2015 and 2017. The Court finds that under these circumstances Plaintiff received adequate notice. *See Hickey*, 969 F.3d at 1124 (plaintiff cannot obtain an extension by pleading ignorance the 45-day time limit if agency made effort to advise employee of time limit).

Although not clearly stated by Plaintiff, he may be asserting that the agency or the Commission should have given him an extension under the "catch all" exception. This exception grants the agency or the Commission the discretion to excuse a complainant from the requirement for any reason they consider "sufficient." If this is Plaintiff's argument, he has not explained or offered any authority to support any argument that the agency abused its discretion by not applying this exception, so he has waived this argument. *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996) (A party waives an issue "by failing to make any argument or cite any authority to support his assertion.") (further citation omitted).

Plaintiff further contends that the 45-day deadline should be equitably tolled, and Defendant estopped from asserting that his complaint was untimely because Plaintiff's struggles with "alcoholism, depression, and debilitating guilt" incapacitated him and prevented him from meeting the deadline. Doc. 27 at 3. He argues that "[p]roviding an extension to the Plaintiff for contacting an EEO Counselor would be considered reasonable accommodation to the Plaintiff for his disability and would cause no undue hardship to the Agency." *Id.* As an affirmative defense, the assertion that a plaintiff did not exhaust administrative remedies is "subject to waiver, estoppel, and equitable tolling." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1183 (10th Cir. 2018)). "'Equitable doctrines such as tolling or estoppel . . . are to be applied sparingly,' because the 'procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.'" *Hickey*, 969

F.3d at 118. The Tenth Circuit has not decided whether mental illness can toll a statute of limitations. But in *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996), the Court stated that if it were to adopt a mental incapacity exception, it would apply it only under "exceptional circumstances," such as institutionalization or incompetency. *Id.; see also Alvarado v. Smith*, 713 F. App'x. 739, 742 (10th Cir. 2017). A plaintiff "has the burden of establishing his mental competency." *Harms v. I.R.S.*, 321 F.3d 1001 (10th Cir. 2003).

To establish grounds for equitable tolling based on mental incapacity, an individual "needs to show that he had been institutionalized for mental incapacity, judged incompetent, or not capable of pursuing his own claim during the period in which he needed to file his application...." *Alvarado*, 713 F. App'x at 743. "'Allegations of mental incompetence alone, however, are generally insufficient to warrant equitable tolling.'" *Wiegand v. Zavares*, 320 F. App'x 837, 839 (10th Cir. 2009) (further citation omitted). "[An individual's] alleged mental incompetency therefore must be 'a but for-cause of any delay.'" *United States v. Barger*, 784 F. App'x 605, 608 (10th Cir. 2019) (quoting *Bills v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010)). Plaintiff has not shown that he was institutionalized for mental incapacity or that he was judged incompetent. His argument appears to be that his mental disabilities made him incapable of meeting the 45-day deadline.

Until now, Plaintiff has not argued mental incapacity. "To preserve issues for review by the courts, objections to agency proceedings should be made while the agency still has an opportunity for correction." *Action, Inc. v. Donovan*, 789 F.2d 1453, 1456 (10th Cir. 1986). By failing to make this claim before the Agency or the EEOC, Plaintiff has forfeited this argument. If Plaintiff substantively intended to argue that he was unable to assert this defense before the

Agency or the Commission because of mental incapacity, he has not provided evidentiary support that it was a "but for" cause of his failure to timely file.

Assuming that this argument is properly before this Court, Plaintiff has not met his evidentiary burden to establish his claim. Plaintiff submitted three forms of new evidence to support this argument: (1) medical records of psychiatric evaluations from November 10, 2016, through May 18, 2017; (2) a November 8, 2019, performance evaluation covering the period between April 15, 2019, through November 15, 2019; and (3) a letter from his brother, Bradley Nash, dated March 9, 2022. The medical records support Plaintiff's assertion that he has social anxiety disorder, PTSD, and panic disorder, but they do not document that Plaintiff was incapable of managing his affairs. Moreover, these records, which are from 2016/2017 precede the relevant timeframe of November/December 2019 by almost two and a half years.

The other evidence does not offer any more support to Plaintiff's claim. Plaintiff's final performance evaluation of the relevant time period gives him a summary rating of "outstanding," which does not suggest that he could not manage his own affairs during that period. Finally, the letter written by Bradley Nash is not admissible evidence, much less relevant evidence for three reasons: (1) it was written almost three years after the relevant time frame, (2) it is the opinion of a family member, not a medical professional, and (3) it is inadmissible hearsay. Even if the letter were admissible, the letter does not indicate that during November/December 2019, Plaintiff was mentally incapable of performing tasks. The letter's strongest assertion of mental difficulty is that "[Plaintiff] didn't function normally" because "he usually goes out and visits family and is more productive and involved."  Doc. 27-4 at 1.

In contrast, other evidence demonstrates that during the relevant time, Plaintiff performed tasks that required judgment and mental clarity. On November 27, 2019, Plaintiff reviewed and heavily edited a typed statement given to a misconduct investigator. The handwritten edits are numerous and cogent. Between November and December 2019, Plaintiff also submitted four applications for new employment. A letter from Plaintiff's counselor Robin LaRocque, who Plaintiff saw between August and November 2019 also does not suggest that Plaintiff was mentally incapacitated but demonstrates the opposite. The letter appears to have been written for the purpose of showing Plaintiff's capacity so he could obtain employment. Doc. 22-9 at 6 ("In my professional opinion, [he] would be an asset to any place of employment."). Collectively, the evidence does not show that Plaintiff was mentally incapacitated.

In another argument not raised before the Agency or the EEOC, Plaintiff contends that the Court should equitably toll the 45-day requirement because it unfairly penalizes federal employees. He asserts that because employees in the private sector have 180 calendar days to initiate contact with the EEO, federal employees should be given the same timeframe. "This limited amount of time is completely unreasonable, unjustly harms persons with mental health disabilities who may struggle to defend themselves, and it violates the Equal Protection Clause of the 14th Amendment[8] which mandates that individuals in similar situations must be treated equally under the law." Doc. 27 at 5.  Defendant responds that the fact that there are different rules for federal and private employees does not substantiate Plaintiff's claim that differing time limits are "arbitrary and wholly irrational." Doc. 30 at 7.

---

[8] Because Plaintiff was a federal employee, the Equal Protection Clause of the 14th Amendment is not applicable as it applies to state actions. Plaintiff's claims arise from a federal statute, so his equal protection rights arise from the Due Process Clause of the Fifth Amendment.[8] *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (equal protection applies to the federal government through the Due Process Clause).

Even if Plaintiff had not forfeited this argument by not raising it before the Agency or the EEOC, it has no merit. Plaintiff's claim falls within § 501 of the Rehabilitation Act, which "operates under the procedural constraints of Title VII of the Civil Rights Act of 1964." *Johnson*, 861 F.2d at 1478.  In cases where Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment," a federal employee must look solely to that statute for relief.  *Brown*, 425 U.S. at 827-29.  Because the Rehabilitation Act covers Plaintiff's disability claim, Plaintiff cannot assert a constitutional right that arises out of that claim in federal district court.[9]

## IV.  Conclusion

The Court does not have subject matter jurisdiction over Plaintiff's § 1983 claims, official capacity *Bivens* claims, NMHRA claims or ADA claims. As Plaintiff has not alleged any facts that assert that Defendant individually violated Plaintiff's constitutional rights, any *Bivens* claim against Defendant in his individual capacity is implausible. Accordingly, the Court will grant Defendant's Motion to Dismiss.

Plaintiff has not demonstrated that there are genuine material issues of material fact as to Plaintiff's Rehabilitation Act claim, and Defendant is entitled to judgment as a matter of law.

---

[9] The Supreme Court has rejected the specific argument presented here, observing that statute of limitations

> are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual.

*Chase Sec. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945).

IT IS ORDERED THAT:

1.    Defendant's Motion to Dismiss (Doc. 21) is GRANTED;

    a.    Plaintiff's § 1983 claim is DISMISSED under Rule 12(b)(1) without prejudice;

    b.    Plaintiff's *Bivens* claim against Defendant in his official capacity, is DISMISSED under Rule 12(b)(1) without prejudice;

    c.    Plaintiff's *Bivens* claim against Defendant in his individual capacity is DISMISSED with prejudice under Rule 12(b)(6);

    d.    Plaintiff's ADA and NMHRA claims are DISMISSED under 12(b)(1) without prejudice;

2.    Defendant's Motion for Summary Judgment (Doc. 22) is GRANTED with prejudice.

_____
UNITED STATES DISTRICT JUDGE